UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| D. SCOTT FLORER,<br><br>      Plaintiff,<br><br>    v.<br><br>FORD MOTOR SERVICES COMPANY, INC., et al.,<br><br>      Defendants. | Case No.  1:22-cv-00449-BLW-DKG<br><br>**REPORT AND RECOMMENDATION** |

This matter comes before the Court on Defendant Lithia Motors, Inc.'s ("LMI") Motion to Dismiss (Dkt. 5), and Plaintiff's Motion to Join Defendants F.R.C.P. Rule 19(a)(1), (2); Alternativly [sic] Motion to Amend F.R.C.P. Rule 15(a)(2) ("Motion for Joinder") (Dkt. 48), which have been referred to the undersigned by District Judge Winmill (Dkt. 53). Both motions have been fully briefed (Dkts. 5, 6, 7, 8, 16, 17, 18, 26, 48, 50, 51, 53, 54) and are ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, the Motion will be decided on the record before this Court without oral argument. Dist. Idaho L. Rule 7.1(d). The Court makes the following report and recommendation:

**REPORT AND RECOMMENDATION** – 1

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a customer dispute over vehicle repairs and applicable warranty terms. Plaintiff D. Scott Florer alleges that in July 2020, he contacted a Boise Lithia Motors repair center for assistance with replacing a truck engine. (Dkt. 1 at 4). After a series of events and communications with the repair center staff between July 2020 and September 2021, Plaintiff alleges the repair center was unable to resolve the problem with the engine. (*Id.* at 4-14).

On October 26, 2022, Plaintiff filed a Complaint with this Court alleging six total claims against Defendants arising under the Magnuson-Moss Warranty Act ("MMWA") and various Idaho state law provisions against several defendants: Ford Motor Service Company Inc.; Lithia Motors Support Services, Inc.; James D. Farley Jr.; Lisa Drake; Bryan DeBoer; Chris Holtzshu; Rhett Sheeder; Rich Stuart; Angelo Sanchez; Travis Stear; Lisa Crabtree. (*Id.* at 1-3, 15-19).

Service of process has been effected on the following Defendants: Ford Motor Company; Lithia Ford of Boise; and Lisa Crabtree, Angelo Sanchez, Rhett Sheeder, Travis Stear, and Rich Stuart. (Dkts. 14, 15, 20, 21, 22, 23, 24, 25, 27, 28). However, service of process has not been effected on Defendants Ford Motor Service Company, Lithia Motors Support Services, Inc., LMI, James D. Farley Jr., Lisa Drake, Bryan DeBoer, or Chris Holtzshu. Ford Motor Service Company, Inc.[1] (also appearing as

---

[1] Based upon the service of process effected on FMC in this case and the Amended Complaint filed by Plaintiff (Dkt. 48-1), it appears that FMC should be substituted for Ford Motor Service Company, Inc. as a party to this action.

FMC), Lithia Ford of Boise, and Defendants Crabtree, Sanchez, Sheeder, Stear and Stuart have each appeared and filed answers in this case. (Dkts. 30, 33, 36).

LMI filed the instant Motion to Dismiss, asserting this Court lacks personal jurisdiction over it. (Dkts. 5). After briefing was completed, Plaintiff filed a Motion for Joinder, asking the Court to join Ford Motor Company ("FMC"), Lithia Ford of Boise, and LMI to this action and remove Defendants James D. Farley, Lisa Drake, Bryan DeBoer, and Chris Holtzshu. (Dkt. 48 at 3). Defendants FMC and Lithia Ford of Boise do not oppose Plaintiff's Motion for Joinder but assert that the Court could accomplish Plaintiff's requested relief via alternative means. (Dkt. 53 at 1-2). However, Plaintiff asserted in his Reply that while he still seeks to join FMC, Lithia Ford of Boise, and LMI to this action, he no longer seeks to dismiss any defendants. (Dkt. 54).

## DISCUSSION

**1. Misjoinder and Nonjoinder of Parties**

The circumstances in which a non-party must be joined as a party in an action are set forth within Rule 19 of the Federal Rules of Civil Procedure. The Rule provides in pertinent part:

> (a) Persons Required to Be Joined if Feasible.
>     (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>         (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>         (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>             (i) as a practical matter impair or impede the person's ability to protect the interest; or

**REPORT AND RECOMMENDATION – 3**

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> (2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Fed. R. Civ. P. 19(a).

"Compulsory joinder is the exception to the otherwise general policy of allowing a plaintiff to decide" the parties to the lawsuit. *Brum v. Cty. of Merced*, 2013 WL 2404844, at *2 (E.D. Cal. May 31, 2013). Put another way, as the Ninth Circuit has explained, "[a] party may be necessary under Rule 19(a) in three different ways":

> First, a person is necessary if, in his absence, the court cannot accord complete relief among existing parties. *See* Fed. R. Civ. P. 19(a)(1)(A). Second, a person is necessary if he has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). Third, a person is necessary if he has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).

*Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).

Here, Defendants FMC and Lithia Ford of Boise, Inc., do not oppose Plaintiff's Motion for Joinder. (Dkts. 50, 51). Their non-opposition is appropriate, given that: (1) the allegations in the Complaint specifically name FMC and Lithia Ford of Boise; (2) summonses were issued for FMC and Lithia Ford of Boise, (Dkts. 14, 15), and (3) service of process has been effected on both FMC and Lithia Ford of Boise, (Dkts. 27, 28).

Based upon the allegations contained in the Complaint, and Defendants' non-opposition to Plaintiff's Motion, the Court finds these parties to be necessary under Rule

**REPORT AND RECOMMENDATION – 4**

19(a)(1)(B)(i) and will recommend that Plaintiff's Motion for Joinder as to FMC and Lithia Ford of Boise, Inc. be granted in part.

As to Defendants Farley, Drake, DeBoer, and Holtzshu, however, while Plaintiff seeks to retain them as parties to this action, they have not been served. Since more than ninety (90) days have passed since the Complaint was filed, Plaintiff must either show good cause why these defendants were not served, or the claims against them will be dismissed without prejudice.[2] Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.").

Finally, as discussed at length below, because the Court finds that it does not have personal jurisdiction over LMI, the Court will recommend that Plaintiff's Motion for Joinder be denied in part as to LMI.

2. **Motion to Dismiss**

   a. **Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(2), Plaintiff bears the burden of proving jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Where "the [defendant's] motion is based on written materials rather than an evidentiary

---

[2] The Court will issue a separate order requiring the same.

**REPORT AND RECOMMENDATION – 5**

hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* The Court looks to the pleadings and affidavits to determine whether the plaintiff has made a prima facie showing of personal jurisdiction. *Id.* "Although the plaintiff cannot 'simply rest on the bare allegations of [his] complaint,' uncontroverted allegations in the complaint must be taken as true." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (quoting *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (citing *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)); *see also Omega RV v. RV Factory, LLC*, No. 1:16-CV-00204-EJL, 2017 WL 1943952, at *2 (D. Idaho May 10, 2017); *Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F.Supp.2d 1114, 1118 (D. Idaho 2009).

"Absent an applicable federal statute governing personal jurisdiction, the district court applies the law of that state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (citing Fed. R. Civ. P. 4(k)(1)(A)). For an Idaho court to exert jurisdiction over an out-of-state defendant, "two criteria must be met; the act giving rise to the cause of action must fall within the scope of [the] long-arm statute and the constitutional standards of due process must be met." *Saint Alphonsus Regional Medical Ctr. v. State of Wash.*, 123 Idaho 739, 852 P.2d 491, 494 (1992).

"Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction." *Wells Cargo,*

*Inc.*, 676 F.Supp.2d at 1118. "Thus, under Idaho law, the jurisdictional and federal due process analyses are the same." *Id.*

Due process requires that a nonresident defendant have sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citation omitted). "[T]he constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum State." *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 108-109 (1987) (internal quotations and citations omitted). "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Id.* at 109 (internal quotations and citations omitted) (emphasis in original).

Personal jurisdiction can be general or specific. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). In the instant case, LMI asserts that this Court lacks both general and specific personal jurisdiction over it.

### b. General Personal Jurisdiction

General jurisdiction over a corporation is appropriate only in the forum where the corporation is incorporated or has its principal place of business, or, in exceptional cases, where the corporation's contacts with the forum state are "so constant and pervasive as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,

**REPORT AND RECOMMENDATION – 7**

924 (2011)). A corporation's engagement "in a substantial, continuous, and systematic course of business" in a forum is insufficient to constitute general personal jurisdiction over a defendant in that forum. *Id.* at 138-39.

Plaintiff has not established that this Court's exercise of general personal jurisdiction over LMI is proper. In other words, Plaintiff has failed to demonstrate that LMI is incorporated or has its principal place of business in Idaho, or that its operations within the state constitutes an "exceptional case ... as to render [it] essentially at home in [Idaho]." *Id.* at 122.

First, LMI is a publicly-traded Oregon corporation with its principal place of business in Medford, Oregon. (Dkt. 16 at 5 (citing Impert Decl., ¶ 2)). LMI does not conduct any business within Idaho and does not maintain any offices, car lots, or employees within Idaho. *Id.* "It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir.2001)). Thus, simply owning dealerships through its Idaho subsidiaries does not make Idaho LMI's jurisdictional home. However, "the alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).

### c. Alter Ego Jurisdiction

To satisfy the alter ego test, "a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.* (quotation marks and alterations omitted).

The "unity of interest" theory "envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* However, a parent company's "substantial" involvement in the subsidiary's activity is insufficient "to negate the formal separation between the two entities" for jurisdictional purposes; instead, a parent must be so involved in a subsidiary's routine day-to-day operations such that there is a failure of the entities to observe their separate "corporate formalities." *Id.*

> Relevant factors include:
>
> the commingling of funds and other assets of the entities; the holding out by one entity that it is liable for the debts of the other; identical ownership of the entities; use of the same offices and employees; use of one as a mere conduit for the affairs of the other; inadequate capitalization; disregard of corporate formalities; lack of segregation of corporate records; and identical directors and officers.

*Spencer v. Greenwald*, No. 4:20-CV-00440-BRW, 2021 WL 1976080, at *4 (D. Idaho Jan. 4, 2021) (citing *E.E.O.C. v. Burrito Shoppe LLC*, No. CV05-329-S-LMB, 2008 WL 2397678, at *2 (D. Idaho June 10, 2008)).

Here, LMI is not a party to the franchise contracts under which its subsidiaries sell vehicles in Idaho; nor is it involved in those entities' operations in Idaho. (Dkt. 7 ¶¶ 3-4).

**REPORT AND RECOMMENDATION – 9**

While LMI does provide some administrative support to each of its entities by way of accounts payable, accounts receivable, credit and collections, accounting and taxes, payroll and benefits, legal, human resources, and cash management, it does so in order to "streamline[] operations and lower operating costs for [its] subsidiaries." (*Id.*) Additionally, the record evidence demonstrates that each subsidiary owns or leases its own facilities, maintains its own accounting books and records, pays its own taxes, and enters into contracts in its own name. (*Id.* ¶ 4). LMI does not have any offices, car lots, repair facilities, or employees in the state of Idaho. (*Id.* ¶ 2).

Further, while Plaintiff asserts that LMI, through its subsidiaries that bear the "Lithia" name, "continuously and systemically serves a market in the forum state of Idaho with [its] products of services" by "marketing the name LITHIA, and by selling vehicles and vehicle parts," and "install[ing] what [it] sell[s]," (Dkt. 17 at 4-5), LMI has presented sworn testimony evincing the fact that each of its subsidiaries are operated as independent entities, and that advertising and personnel decisions are made by the subsidiary alone. (*Id.* ¶ 4). Finally, despite the fact that Plaintiff has named LMI as a defendant in this lawsuit, the allegations in the Complaint demonstrate that Plaintiff contacted Lithia Ford of Boise, not LMI, and engaged in various communications and transactions with them. (Dkt. 1 at 4-14).

Based upon the record before the Court, there is no evidence suggesting LMI exercises the type of control or decision-making authority over its Idaho subsidiaries such that it is subject to general personal jurisdiction in the state of Idaho. That LMI's subsidiaries use the "Lithia" name in their marketing techniques and branding is simply

**REPORT AND RECOMMENDATION – 10**

not enough to demonstrate that LMI exercises the type of authority or control such that LMI is overtly involved in Lithia Ford of Boise's routine day-to-day operations or that LMI and its subsidiaries are unable to observe their separate corporate formalities. Ultimately, Plaintiff has failed to make the requisite showing that this Court has the ability to exercise general personal jurisdiction over LMI.

### d. Specific Personal Jurisdiction

In contrast to general personal jurisdiction, specific personal jurisdiction is exercised when a state asserts personal jurisdiction over a defendant in a lawsuit arising out of or related to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Specific jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action. *Lake*, 817 F.2d at 1421. The United States Court of Appeals for the Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc.*, 433 F.3d at 1205–06 (quoting *Schwarzenegger*, 374 F.3d at 802). Plaintiff bears the burden of satisfying the first two prongs of the test. *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). If Plaintiff succeeds in satisfying the first two prongs,

**REPORT AND RECOMMENDATION – 11**

the burden shifts to LMI to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *See id.* (quoting *Schwarzenegger*, 374 F.3d at 802); *Wells Cargo*, 676 F.Supp.2d at 1120 (applying the three-prong test).

The first prong of the specific jurisdiction test is satisfied when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hailed into court there." *Loral Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560, (9th Cir. 1995) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In determining whether the first prong has been met, the Ninth Circuit distinguishes between cases arising out of tort and those arising out of contract. While a purposeful direction analysis is used in tort cases, *see Schwarzenegger*, 374 F.3d at 802–03, a purposeful availment analysis is used in contract cases, *see Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008); *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 817 (9th Cir. 1988). Because Plaintiff's MMWA breach of warranty and arbitration claims against LMI sound in contract, rather than tort, (Dkt. 1 at 15-19), the purposeful availment analysis applies.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. "By taking such actions, a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, (1958)). And "in return for these 'benefits and protections,' a defendant must—as a *quid pro quo*—'submit to the

burdens of litigation in that forum.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

The second prong, relatedness, requires application of a "but for" test. *Melaleuca, Inc. v. Hansen*, No. CV07-212-E-EJL, 2008 WL 2788470, at *12 (D. Idaho July 18, 2008) (citing *Harris Rutsky & Co*, 328 F.3d at 1131–32). "[A] single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Menken*, 503 F.3d at 1060 (citing *Yahoo! Inc.*, 433 F.3d at 1210) (internal quotation marks omitted).

Finally, if Plaintiff satisfies the first two prongs of the test for specific personal jurisdiction, the burden shifts to LMI "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.3d at 1057 (quoting *Schwarzenegger*, 374 F.3d at 802). To determine the reasonableness of exercising jurisdiction over a defendant, the court considers the following factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)). As to the first factor, some Ninth Circuit decisions "have suggested that once the minimum contacts threshold is met the degree of intrusion into the forum becomes irrelevant." *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (citing *Corporate Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 787 (9th Cir. 1987)). Other

**REPORT AND RECOMMENDATION – 13**

decisions indicate that "[e]ven if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness." *Id.* (quoting *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)) (alterations in original).

Here, Plaintiff asserts that because LMI "does all the accounting for their 276 Nation-Wide Dealers slinging Ford, Dodge, and GM," it has "minimum contacts with the forum state of Idaho," which "provid[es] this court with specific jurisdiction by meeting the first two prongs in the analysis." (Dkt. 17 at 6). Plaintiff further asserts that because LMI "marketed on the local TV channels that they repair all Ford vehicles in the[ir] repair shops in Boise Idaho and the new 5.0 Coyote engine was sold to an Idaho resident in Idaho," "the 'essential foundation' of specific jurisdiction"—"a strong 'relationship among the defendant, the forum and the litigation'"—"applies to LMI." (Dkt. 17 at 6 (quoting *Helicopteros*, 466 U.S. at 414)).

As to the first prong, Plaintiff has not demonstrated that LMI purposely availed itself of the privilege of doing business in Idaho. As discussed above, the evidence establishes that LMI's subsidiaries have complete control over their respective dealerships' advertising and maintain their own accounting books and records, pay their own taxes, and enter into contracts in their own names. (Dkt. 7 ¶¶ 3-4). Indeed, it appears that LMI's sole business contacts with Idaho occur through its subsidiaries. (*Id.* ¶¶ 1-2).

Similarly, as to the second prong, Plaintiff's claims arise out of the contacts between himself, Lithia Ford of Boise, and Defendants Stuart, Sanchez, Stear, Crabtree, and Sheeder, who appear to be employed by Lithia Ford of Boise, not LMI. (Dkt. 1 at 3);

**REPORT AND RECOMMENDATION – 14**

(Dkt. 7 ¶ 4) (noting hiring and firing decisions are made by the management team of the individual subsidiary). Because the Court finds Plaintiff has not met his burden with respect to the first and second prongs of the analysis, the Court need not discuss the third prong.

Based upon the foregoing, the Court finds that it also lacks specific personal jurisdiction over LMI and its officers. Accordingly, the Court will recommend that Defendant LMI's Motion to Dismiss be granted.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED that:**

1. Plaintiff's Motion for Joinder (Dkt. 48) be **GRANTED in part** and **DENIED in part**.

2. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 5) be **GRANTED**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: April 28, 2023

_____
Honorable Debora K. Grasham
United States Magistrate Judge