UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| D. SCOTT FLORER,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY, INC.;<br>LITHIA FORD OF BOISE, INC.;<br>RHETT SHEEDER; RICH STUART;<br>ANGELO SANCHEZ; TRAVIS<br>STEAR; and LISA CRABTREE,<br><br>Defendants. | Case No. 1:22-cv-00449-BLW-DKG<br><br>**MEMORANDUM DECISION &<br>ORDER** |

**INTRODUCTION**

On November 16, 2023, United States Magistrate Judge Debora K. Grasham heard argument on various pending discovery motions in this matter and then issued oral rulings resolving them. Plaintiff D. Scott Florer has objected to many of those rulings. *See* Dkts. 146, 148, 149, 150, 161. The Court has reviewed the underlying motions, the transcript of the November 16, 2023 hearing, which contains the oral rulings, and Mr. Florer's objections. For the reasons explained below, the Court will overrule most of Mr. Florer's objections but will sustain objections related to Defendant Ford Motor Company, Inc.'s obligation to produce documents within its "possession." As explained below, parties responding to

requests for production of documents are obligated to produce documents in their "possession, custody, or control."

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may hear and determine any pretrial matter before the court, with certain exceptions not relevant here. This Court may reconsider a magistrate judge's ruling on such a matter if that ruling is "clearly erroneous or contrary to law." 18 U.S.C. § 636(b)(1)(A).

## DISCUSSION

The parties are engaged in discovery efforts in this matter, and the deadline for completing fact discovery is approaching. The disputes currently before the Court relate to the Magistrate Judge's oral ruling relating to (1) Mr. Florer's motion to compel responses to certain interrogatories and requests for production of documents, and (2) Mr. Florer's motion to terminate or limit his deposition. The Court will resolve each objection in turn.

**A. <u>Disputes Related to Plaintiff's Requests for Production of Documents</u>**

   **1. Request for Production No. 2 – Engine Assembly Specifications**

The first dispute relates to Mr. Florer's Request For Production No. 2, which asked Defendant Ford Motor Company, Inc. (FMC) to produce the following documents:

   Produce the FMC 2018 to 2020 Gen. III 5.0 4V Coyote Long Block

> engine (FMC Motorcraft Part No. DL3Z 6006) Factory remanufactured service engine assembly specifications listing the specs for each internal part of the engine assembly including the long block itself and the heads with a certification from the custodians of such records (Pursuant to F.R.C.P. 26-37:F.R.E. Titles 8-9).

*See* Dkt. 74, at 2. FMC responded to the request with this objection:

> Ford objects on the basis that the description of the engine does not match the part number provided, and as Ford has not been provided with any receipt or documentation regarding the engine purchased by the Plaintiff Ford cannot determine the documents that would be relevant to Plaintiff's claim. Ford also objects to this request as it is unduly burdensome and overly broad because this information is equally available to Plaintiff online at https://performanceparts.ford.com/. Further, this is a case under Breach of Contract and Breach of Warranty and the subject matter of this case revolves exclusively around the subject vehicle and engine. The specifications of the engine are irrelevant to the claims made in the Complaint.

*Id.*

During the hearing, the Magistrate Judge ordered FMC to produce responsive documents, as follows: "The Court will order Defendant FMC to produce the information related only to the Plaintiff's engine, and specifically only that information that they find relevant that is in their possession." *Hearing Tr.*, Dkt. 168, at 21:23 to 22:1.

Plaintiff objects to this ruling for two reasons. First, he objects because FMC was ordered to produce responsive documents only to the extent such documents were in FMC's "possession." He suggests that "FMC's Authorized Dealer who[]remanufactured the engine at issue" should also be ordered to produce

MEMORANDUM DECISION & ORDER - 3

documents. *See* Dkt. 146, at 4. The Court will not order a non-party to produce responsive documents. But the Court will clarify that FMC must produce all responsive documents, as narrowed in subject matter by the Magistrate Judge, that are in its possession, custody, *or* control. FMC should not limit itself only to documents within its "possession" as the relevant rule calls for the responding party to produce documents in its "possession, custody, or control." *See* Fed. R. Civ. P. 34. To that limited extent, the Court will sustain Mr. Florer's objection. Otherwise, the Court will overrule Mr. Florer's objections as the Magistrate Judge's order was not clearly erroneous or contrary to law. Rather, she appropriately narrowed and focused the category of responsive documents to be produced.

### 2. Request for Production No. 3 – "Noise"

The next dispute relates to Mr. Florer's Request for Production No. 3, which asked Defendant FMC to produce the following documents:

> Produce the results of e-discovery key word searches for the following words "Compare to like vehicle same noise" and "no abnormal noise"

*See* Dkt. 74, at 3. FMC responded with this objection:

> Ford objects to this Interrogatory as overly broad, unduly burdensome and seeking irrelevant documents, particularly because it is not limited to the allegations of the Complaint, any particular consumer complaint, or to a reasonable or relevant timeframe, and because Plaintiff's request does not describe the information sought with required specificity. Further, this is a case under Breach of Contract

>and Breach of Warranty and the subject matter of this case revolves exclusively around the subject vehicle. (Doc. 47.) In addition, this Request seeks information related to other complaints, the facts and circumstances of which are substantially dissimilar to those of the present case, and which are not within the scope of discovery as set forth in the Discovery Plan (Doc. 47). The facts and circumstances surrounding claims or incidents vary widely and depend on various factors that are not included in this Request, including the care and use of the vehicle, installation of aftermarket parts, and the misuse or abuse of the vehicle. Ford also objects to this Request because it is broad enough to seek documents protected by the attorney-client privilege and/or work product doctrine, as this Request could seek documents and communications that reflect the legal advice, mental impressions, and legal strategies prepared for anticipated or pending litigation by Ford's attorneys, Ford's Office of the General Counsel, or those working under their direction and supervision.

*Id.* at 3-4.

The Magistrate Judge denied Mr. Florer's motion to compel, reasoning that even after the parties attempted to narrow the request, it was overly broad and not proportional to the claims and defenses in this case. She explained that the language of the request "is so overbroad, it is not limited to any vehicle, make, model, model year, a time frame, the location or even database to search." *Nov. 16, 2023 Tr.*, Dkt. 168, at 22:12-14.

Mr. Florer objects to this ruling. He points out that the terminology used in his request "are the words used on the invoices . . . to assert that there is not an engine defect." *See* Dkt. 146, at 2. He also points to this verbiage in his complaint:

>Only after Pre-sale and Sale of the warranted consumer product have Defendant Warranters disclosed their Written-Warranty/Limited-

MEMORANDUM DECISION & ORDER - 5

> Warranty/Express-Warranty terms *"compare to like vehicle same noise"* and *"no abnormal noise,"* thus, a misrepresentation to the Consumer because the aforesaid terms constitute an actual Warranty and are not part of the bargain.
>
> Had these terms been disclosed Pre-sale/sale, the Plaintiff would not have transacted business with the Defendants, nor would the Plaintiff had done so had the Defendants disclosed that *"abnormal noise"* is not covered by their Reman Engine Warranty.

*Am. Compl.*, Dkt. 65, at 17 (emphasis added).

But even with this understanding of plaintiff's allegations, the request, as worded, is overly broad. As the Magistrate Judge correctly pointed out, it does not contain any limits as to time or type of vehicle. Thus, the Magistrate Judge did not clearly err in denying the motion to compel regarding Request for Production No. 3. Accordingly, the Court will overrule Mr. Florer's objection.

B. **Disputes Related to Plaintiff's Interrogatories**

   **1. Interrogatory Nos. 1 and 4 – Internal Engine Parts**

The next dispute relates to Plaintiff's Interrogatory Nos. 1 and 4, which posed the following questions to FMC:

Interrogatory No. 1

What internal parts, including the Long Block itself, of the 2018 to 2020 Gen. III 5.0 Coyote 4V Long Block Remanufactured Engine Assembly; Motorcraft part no. DL3Z 6006 are remanufactured?

Interrogatory No. 4

Describe the process used as to who machined the Long Blocks and the internal

parts for the long blocks of the 2018-2020 Gen. III 5.0 Coyote 4V Long Block Motorcraft part no. DL3Z 6006?

*See* Dkt. 81, at 2, 5.

> FMC responded to Interrogatory No. 1 with the following objection:
>
> Ford objects because this Interrogatory is overly broad and seeks irrelevant information, as this was not the engine purchased by Plaintiff, and because identification of which components of the engine purchased by Plaintiff were remanufactured has no bearing on the issues of this case. To prove a claim against Ford, Plaintiff needs to establish that a warranty existed, what the terms of that warranty were, and that Ford failed to repair or replace defective components in a reasonable number of time or attempts. Identification of certain parts as remanufactured has no tendency to make any relevant fact more or less likely.

*Id.* at 2. FMC did not answer Interrogatory No. 4, either. Instead, it objected on the same grounds as it did to Interrogatory No. 1, though this time FMC said "the process used to machine long blocks" has no bearing on the issues in this case. *Id.* at 5-6.

At the hearing, Judge Grasham partly granted Mr. Florer's motion to compel responses to these interrogatories. She ordered FMC to provide responses that relate specifically to the engine in Plaintiff's vehicle. Specifically, as to Interrogatory No. 1, the Magistrate Judge issued the following ruling:

> I'm going to order that Ford file a response to the extent it has any information responsive to Plaintiff's interrogatory No. 1 that relates specifically to Mr. Florer's engine. Not any other engine. Not a Gen III engine and it only relates to 2020 and not a longer time frame since that is when his engine was at issue.

MEMORANDUM DECISION & ORDER - 7

> So with that limitation, now, if Ford doesn't have information, they just have to say we've searched and we do not have information specific to plaintiff's interrogatory 1 related to Mr. Florer's specific engine in 2020. If they do, then they can respond accordingly.

Dkt. 168, at 45:7-13. And as to Interrogatory No. 4, the Magistrate Judge issued the following ruling:

> So to the extent that Ford Motor Company has any information about the process used as to who machined the long blocks and internal parts of the long block of Mr. Florer's specific engine, then they can produce that information to Mr. Florer.
>
> Ford Motor Company is not required to search that information beyond what is in its custody and control. Nor is it required to produce any information that might be relevant to any other engine other than Mr. Florer's.

*Id.* at 46:16-24.

Mr. Florer objects to these rulings. He states that "the entire assembly line should be produced for the engine for the production year of 2020." Dkt. 148, at 4. He further objects on the grounds that "the magistrate said documents only in FMC's possession need be produced when in fact it is FMC's Ford Authorized Dealer who[] remanufactured the engine at issue." *Id.*

The Court will first address plaintiffs' objection related to his assertion that FMC should answer a broader question related to the "entire assembly line . . . for the production year of 2020." The Court will overrule that objection as the Magistrate Judge did not clearly err in narrowing the scope of the requested

MEMORANDUM DECISION & ORDER - 8

information.

The second objection doesn't precisely track the Magistrate Judge's ruling, because she issued an oral ruling relating only to *interrogatories.* She did not order FMC to produce documents identified within the response to Interrogatory Nos. 1 and 4. Nevertheless, the Magistrate Judge's rulings have a domino effect because Mr. Florer served two document requests that corresponded with Interrogatory Nos. 1 and 4. Specifically, Request for Production No. 9 stated: "If documents are part of the answer to Interrogatory No. 1 above, produce them certified by the custodian." *See* Dkt. 81, at 2. Request No. 13 sought identical documents as related to Interrogatory No. 4. *See id.* at 6. Accordingly, given that the Magistrate Judge has ordered FMC to respond to Interrogatory Nos. 1 and 4, this Court will order FMC to produce any documents within its possession, custody, or control that are identified in those answers. As a point of clarification, however, in answering Interrogatory Nos. 1 and 4, FMC will be responding to those questions as they were narrowed by the Magistrate Judge. In that respect, then, the Court will sustain Mr. Florer's objection to the Magistrate Judge's ruling, but it will overrule the objections in all other respects, as Mr. Florer has not shown that the Magistrate Judge clearly erred or issued an order that is contrary to law.

    **2. Interrogatory No. 5 – Technical Service Bulletins**

The next dispute relates to Interrogatory No. 5, which poses the following

question to FMC: "Have any Ford technical service bulletins been issued as to the Gen III 5.0 Coyote 4V Long Block Remanufactured Engine Assembly from 2018-2023?" Dkt. 81, at 6. FMC objected to this interrogatory, as follows: "Ford objects because this Interrogatory is overly broad and seeks irrelevant information, as this was not the engine purchased by Plaintiff." *Id.* During the hearing, defense counsel further explained that even if the question was limited to the engine in Plaintiff's vehicle, it still is "not limited to any specific type of issue and this case appears to be limited to some sort of noise and if we're to produce all sorts of service bulletins that have nothing to do with this case, that would be unduly burdensome." Dkt. 168, at 38:13-16.

The Magistrate Judge denied Mr. Florer's motion to compel a response, explaining that the interrogatory, as posed, was overly broad in that it "has no specification as to Ford Motor Company as to what specifically are related to the claims in this case." Dkt. 168, at 47:4-8. The Magistrate Judge further concluded that the request was not proportional and was overbroad and unduly burdensome. *Id.* Mr. Florer objects to the Magistrate Judge's ruling on the grounds that the information sought could be relevant to the machining process for the re-manufactured parts at issue in this lawsuit. *See* Dkt. 148, at 4. The Court will overrule this objection, however, as the Magistrate Judge's ruling does not reflect clear error, nor is it contrary to law.

MEMORANDUM DECISION & ORDER - 10

## C. **Plaintiff's Motion to Terminate or Limit his Deposition**

The final issue relates to defendants' efforts to depose Mr. Florer. Earlier, Mr. Florer unilaterally terminated his deposition on grounds that defense counsel was "embarrassing" and "annoying" "the witness" *See Oct. 4. 2023 Depo. Tr.*, Dkt. 117-1 at 52:5-12.[1] Shortly after ending his deposition, Mr. Florer filed a written motion to terminate or limit the deposition. *See* Dkt. 111. Judge Grasham denied that motion during the November 16, 2023 hearing. *See* Dkt. 168, at 60:21-22. She further noted that during Mr. Florer had "not responded appropriately in answering ... legitimate questions posed by the defendant" during the deposition. *Id.* at 60:15-21.

Mr. Florer asserts various objections to Judge Grasham's ruling, as follows:

(1) He objects because Judge Grasham did not explicitly state that compelling him to sit for a second deposition would lead to the discovery of any admissible evidence.

(2) He says Judge Grasham didn't consider the time he has already spent either being deposed, or showing up at a previously scheduled deposition, which

---

[1] Defendant also asserted that Lithia Ford of Boise, Inc. should not be allowed to participate in the deposition as that entity was in default, but the Court has since denied Mr. Florer's motion for a default judgment against Lithia Ford.

MEMORANDUM DECISION & ORDER - 11

had to be rescheduled after the court reporter didn't show up.

(3) He says he didn't have a chance to review the transcript from his first deposition before "the court reporter certified it and sold it to Lithia Ford of Boise and FMC." Dkt. 149, at 4.

(4) He says his deposition should be limited in scope to "to the claims in this case that are a[n] eighty seven (87) day window from the consumer contact with the Ford Authorized Dealer Lithia Ford of Boise to the new engine failure at 2,400 miles on the new engine before the first required oil/filter change." *Id.*

The Court will overrule all of these objections, as none show Judge Grasham issued an order that is clearly erroneous or contrary to the law. She acted well within the law in denying the motion to terminate the deposition and in ordering Mr. Florer to appear for another deposition, for a period of up to seven hours. Although Mr. Florer says the Court should deduct the time he has already spent being deposed, Federal Rule of Civil Procedure 30(d)(1) allows the Court to extend the 7-hour durational limit. *See* Fed. R. Civ. P. 30(d)(1) (indicating that depositions are limited to "1 day of 7 hours" "unless otherwise . . . ordered by the court.). Fed. R. Civ. P. 30(d)(1). Here, given what has transpired thus far, allowing additional time was entirely proper. And, otherwise, the Court is not persuaded that Judge Grasham should have limited the subject-matter of the deposition along the lines Mr. Florer recommends. Finally, the Court agrees with Judge Grasham's

assessment of Mr. Florer's conduct during the October 4, 2023 deposition. For all these reasons, the Court will overrule Mr. Florer's objections to Judge Grasham's order denying the motion to terminate or limit his deposition.

## ORDER

**IT IS ORDERED that:**

1. Plaintiff's Objections to the Magistrate Judge's Order granting in part and denying his motion to compel responses, as related to Request for Production Nos. 2 and 3 (Dkt. 146), are **SUSTAINED in part** and **OVERRULED in part** as described above.

2. Plaintiff's Objections to the Magistrate Judge's Order, which granted in part, and denied in part, his motion to compel responses to Interrogatory Nos. 1, 4, and 5 (Dkt. 148), are **SUSTAINED in part and OVERRULED in part** as described above.

3. Plaintiff's Objections to the Magistrate Judge's Order denying his motion to terminate or limit his deposition (Dkt. 149) are **OVERRULED.** *__Defendant is therefore ordered to appear for a deposition, which may last up to seven hours, by no later than December 15, 2023__*.

4. Plaintiff's Objection related to the vehicle inspection (Dkt. 150) is **DEEMED MOOT** by virtue of this Court's earlier ruling related to that inspection. *See* Dkt. 169.

5. Plaintiff's Objection related to Lithia Ford's purported default (Dkt. 161) is **DEEMED MOOT** by virtue of this Court's earlier ruling, which adopted Judge Grasham's Report & Recommendation related to Lithia Ford. *See* Dkt. 170.

DATED: December 7, 2023

_____
B. Lynn Winmill
U.S. District Court Judge